# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:17-cr-264-MOC

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| B.T. WRIGHT, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** is before the Court on Defendant's pro se Motion for Compassionate Release/Reduction of Sentence. (Doc. No. 40). Defendant is currently serving a 162-month sentence at Beckley FCI in Beaver, West Virginia, for conspiracy to commit robbery, two counts of robbery, and brandishing a firearm during, in relation to, and in furtherance of a crime of violence. Defendant seeks early release from prison under 18 U.S.C. § 3582(c)(1)(A) based on the COVID-19 pandemic. The Government has responded in opposition to the motion.

## I. BACKGROUND

On September 17, 2016, Defendant and a co-conspirator entered a jewelry store armed with handguns. (PSR ¶ 7). Three customers and two employees were inside the store. (Id.). Defendant pointed his black handgun at one of the store's employees. (Id. ¶ 9). Defendant then pushed his handgun against a customer's waist and ordered the customer to pull jewelry out and place it on the counter. (Id.). The customer complied and Defendant took the jewelry. (Id.). Defendant and his co-conspirator also took some of the victims' personal property. (Id. ¶ 11). They fled the scene with that property as well as $236,854.80 worth of jewelry that belonged to the jewelry store. (Id.).

-1-

On November 17, 2016, Defendant entered a pawn shop in Charlotte armed with a handgun. (Id. ¶ 14). Inside the shop, Defendant pointed his handgun at a customer, grabbed her hand, gave her a white shopping bag, and instructed her to have a nearby employee put money in the bag. (Id. ¶ 15). The customer gave the bag to an employee, and the employee filled the bag with $2,936.00 in various denominations. (Id.). Officers with the Charlotte-Mecklenburg Police Department (CMPD) pursued Defendant in his getaway car shortly after the robbery. (Id. ¶ 16). Defendant wrecked his car, then jumped from the car and ran. CMPD officers chased Defendant on foot and apprehended him shortly thereafter. (Id. ¶ 17). Officers found the stolen money and a handgun inside of Defendant's car. (Id. ¶¶ 18–19).

On September 15, 2017, Defendant pled guilty to conspiracy to commit Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 1) and Hobbs Act Robbery, in violation 18 U.S.C. §§ 1951(a) and 2 (Count 2), both offenses occurring on September 17, 2016. (PSR ¶ 1). Defendant also pled guilty to Hobbs Act Robbery, in violation of 18 U.S.C. § 1951(a) (Count 3) and brandishing a firearm during, in relation to, and in furtherance of a Hobbs Act Robbery, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 4), both offenses occurring on November 17, 2016. (Id. ¶ 1).

A probation officer prepared Defendant's Final Pre-Sentence Report ("PSR") on December 4, 2017. The PSR listed Defendant's prior convictions, which included 2009 convictions of four conspiracy to commit armed robbery offenses and four armed robbery offenses. (Id. ¶¶ 52–57). Defendant's total offense level was 28. (Id. ¶ 50). Based on Defendant's criminal history category III, his guidelines range was 97-121 months imprisonment for counts one, two, and three. (Id. ¶ 79).

Defendant's guidelines range was 84 months for count four. (Id.). The Court sentenced Defendant in 2018 to 78 months of imprisonment on counts one, two, and three and 84 months of imprisonment on count four, for a total term of 162 months. (Gov. Ex. 1, at 4). Defendant, 31 years old, is currently incarcerated at FCI Beckley in Beaver, West Virginia. According to Federal Bureau of Prisons ("BOP") records, as of February 26, 2021, Defendant has served three years, six months, and twenty-six days, which BOP officials calculate as roughly 31% of his anticipated statutory term of imprisonment. (Gov. Ex. 1, at 3). Defendant's projected release date with full good time credit is January 30, 2029. (Id.).

BOP has begun administering vaccines to inmates and staff. As of March 11, 2021, BOP has administered a total of 75,780 doses of the COVID-19 vaccine. COVID-19 Vaccine Implementation, BOP, https://www.bop.gov/coronavirus/. After offering the vaccine to all employees, institutions will give priority to inmates assigned to work in health service units and inmates in nursing care centers or other residential care units. COVID-19 Vaccine Guidance, BOP 6 (Jan. 4, 2021), https://www.bop.gov/resources/pdfs/2021_covid19_vaccine.pdf. Next, priority will be given to inmates age 65 or older and inmates of any age who, based on CDC criteria, "are at increased risk" for severe illness from COVID-19 due to one or more medical conditions. (Id.). The third level of priority for vaccine administration includes inmates between 50 and 64 years old and inmates of any age who, based on CDC criteria, "might be at increased risk" for severe illness from COVID-19 due to one or more medical conditions. (Id. at 7). Vaccines will then be available to all other inmates. (Id.). With regard to Defendant's institution, as of March 11, 2021, 114 inmates and 160 staff at FCI Beckley have received both doses of the COVID-19 vaccine. COVID-19 Vaccine Implementation, BOP,

https://www.bop.gov/coronavirus/. Defendant had not received a vaccine as of February 26, 2021.

Defendant filed the present motion for compassionate release on February 12, 2021. (Doc. No. 40 (Mot. Comp. Rel.)).  A BOP representative confirmed that Defendant requested compassionate release from FCI Beckley on January 5, 2021.  On January 11, 2021, the warden issued a letter communicating a decision to deny Defendant's request with instructions on how Defendant may commence an appeal of the decision.  (Gov. Ex. 2).  Defendant did not file an administrative appeal of the warden's denial of his compassionate release request, and more than 30 days has passed.

## II. DISCUSSION

By its terms, 18 U.S.C. § 3582(c)(1)(A) permits the Court to reduce the defendant's term of imprisonment "after considering the factors set forth in [18 U.S.C. § 3553(a)]" if the Court finds, as relevant here, that (i) "extraordinary and compelling reasons warrant such a reduction" and (ii) "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A)(i).  As the movant, the defendant bears the burden to establish that he or she is eligible for a sentence reduction.  United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016); United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a non-binding policy statement addressing motions for reduction of sentences under § 3582(c)(1)(A).[1]  As relevant here, the non-binding

---

[1] In a recent decision, the Fourth Circuit determined that the policy statement is no longer binding on courts deciding compassionate release motions because U.S.S.G. § 1B1.13 was enacted before the First Step Act.  United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).  Specifically, the Fourth Circuit held that the policy statement found in U.S.S.G. § 1B1.13 does not apply to compassionate release motions brought by inmates under 18 U.S.C. §

policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the Court finds that (i) "extraordinary and compelling reasons warrant the reduction"; (ii) "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)"; and (iii) "the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13.

The policy statement includes an application note specifying the types of medical conditions that qualify as "extraordinary and compelling reasons." First, that standard is met if the defendant is "suffering from a terminal illness," such as "metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, the standard is met if the defendant is: (I) suffering from a serious physical or medical condition, (II) suffering from a serious functional or cognitive impairment, or (III) experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii). The application note also sets out other conditions and characteristics that qualify as "extraordinary and compelling reasons" related to the defendant's

---

3582(c)(1)(A)(i). Id. at 281–83. The McCoy Court reasoned that, because Section 1B1.13 applies only to motions brought by the Bureau of Prisons, it cannot be the policy statement applicable in circumstances where defendants bring their own motions for compassionate release. Id. In place of the no-longer-applicable policy statement, McCoy permits "courts [to] make their own independent determinations of what constitutes an 'extraordinary and compelling reason[ ]' under § 3582(c)(1)(A), as consistent with the statutory language[.]" Id. at 284. The McCoy Court noted, however, that Section 1B1.13 "remains helpful guidance even when motions are filed by defendants." Id. at 282 n.7. Because this Court finds that the policy statement is extremely helpful in assessing motions for compassionate release brought by defendants, the Court will rely on it as guidance.

age and family circumstances. U.S.S.G. § 1B1.13, cmt. n.1(B)-(C).

Finally, in addition to the non-binding policy statement, the Fourth Circuit has recently clarified that courts may make their own independent determinations as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). United States v. McCoy, 981 F.3d 271 (4th Cir. 2020).

The mere existence of the COVID-19 pandemic, which poses a general threat to every non-immune person in the country, cannot alone provide a basis for a sentence reduction. The conditions described in U.S.S.G. § 1B1.13 encompass specific serious medical conditions afflicting an individual inmate, not generalized threats to the entire population. As the Third Circuit has held, "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

That does not mean, however, that COVID-19 is irrelevant to a court's analysis of a motion under Section 3582(c)(1)(A). If an inmate has a chronic medical condition that has been identified by the CDC as elevating the inmate's risk of becoming seriously ill from COVID-19, that condition may satisfy the standard of "extraordinary and compelling reasons." Under these circumstances, a chronic condition (i.e., one "from which [the defendant] is not expected to recover") reasonably may be found to be "serious" and to "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility," even if that condition would not have constituted an "extraordinary and compelling reason" absent the risk of COVID-19. U.S.S.G. § 1B1.13, cmt. n.1(A)(ii)(I).

Defendant's request for a sentence reduction will be denied because he has failed to show

extraordinary and compelling circumstances warranting his early release from prison. Defendant appears to have a health issue that likely makes him more susceptible to becoming seriously ill if he were to contract COVID-19—that is, he is obese. Defendant has not, however, established that this Court should exercise its discretion under § 3582(c)(1)(A)(i) to grant compassionate release because he has not established a particularized risk of contracting COVID-19 at FCI Beckley.[2] As of March 11, 2021, FCI Beckley had 1,558 inmates. As of that same date, no inmates were positive for COVID-19 and only five staff members were positive. Confirmed Active Cases, BOP, https://www.bop.gov/coronavirus/. With regard to FCI Beckley, Defendant's motion makes reference to a shared ventilation system and circumstances when staff were not properly masked. (Doc. No. 40 at 1). Even taking these complaints as fact, Defendant has not established any "inadequacies" relating to FCI Beckley "protocols," much less "how those inadequacies jeopardize his health." United States v. Bryant, No. 4:19cr47-10(DJN), 2020 WL 7497805, at *5 (E.D. Va. Dec. 21, 2020). FCI Beckley continues to follow BOP's modified operations plan during the COVID-19 emergency. These mitigation efforts reinforce that Defendant does not face a particularized risk at his facility.

Further, Defendant has not provided this Court with his release plan. Without a release plan, Defendant cannot show that he is less likely to contract COVID-19 outside FCI Beckley. Releasing Defendant would not necessarily be any safer for him because he would be released to a home that does not follow the strict procedures laid out in the BOP's modified operations plan. See United States v. Watson, No. 1:07-cr-396, 2020 WL 7318269, at *2 (E.D. Va. Dec. 11,

---

[2] In his motion, Defendant also claimed to suffer from hypertension. Although referencing a history of hypertension and smoking, Defendant's medical records indicate that he does not meet the criteria for a current diagnosis of hypertension. (Gov. Ex. 3 at 15 (Medical Records)).

2020); see United States v. Feiling, 453 F. Supp. 3d 832, 842 (E.D. Va. 2020) ("[A]lthough Defendant argues that home confinement would allow him to better mitigate his exposure to COVID-19, the same can be said of keeping Defendant in prison, where the BOP has already taken steps to isolate prison facilities from internal and external sources of the coronavirus."). Additionally, releasing the defendant "might expose others to the dangers of COVID-19 because he would need to interact with his family, his probation officer, and other members of the community." Id.

Even if Defendant could give an extraordinary and compelling reason for compassionate release, the statutory sentencing factors weigh against release. Section 3582(c)(1)(A) requires a court to consider the factors set forth in 18 U.S.C. § 3553(a) before reducing a defendant's sentence. Those factors include "the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant." United States v. Prater, No. 3:13cr133(DJN), 2021 WL 54364, at *4 (E.D. Va. Jan. 6, 2021) (citing 18 U.S.C. § 3553(a)(1)–(2)).

Section 3553(a) also instructs courts to "consider the kinds of sentences available and the sentencing range established for the offense." United States v. Nabaya, No. 3:17cr3, 2021 WL 54361, at *4 (E.D. Va. Jan. 6, 2021) (quoting 18 U.S.C. § 3553(a)(4)). Further, the Sentencing Commission policy statement, U.S.S.G. § 1B1.13, instructs courts to consider the factors set forth in 18 U.S.C. § 3142(g), including "the nature and circumstances of the offense charged …; the history and characteristics of the person …; [and] the nature and seriousness of the danger to

-8-

Case 3:17-cr-00264-MOC-DSC   Document 45   Filed 03/22/21   Page 8 of 11

any person or the community that would be posed by the person's release." Id. (quoting 18 U.S.C. § 3142(g)). Here, the relevant statutory sentencing factors do not support compassionate release. The seriousness of Defendant's offense weighs heavily against release. See United States v. Jankee, No. 3:12-CR-358-MOC, 2020 WL 6140448 (W.D.N.C. Oct. 19, 2020) (finding that release was not warranted despite the defendant's obesity where the defendant had served 96 of a 180-month term, and the offense involved 36 kilograms of cocaine and multiple firearms).

Considering information in the PSR, Defendant is a danger to the safety of other persons and the community. The instant offenses involved multiple armed robberies. (PSR ¶ 1). In the first robbery, Defendant pointed his firearms at employees and customers. (Id. ¶ 9). Defendant and his co-conspirator stole $246,854.80 worth of jewelry in a violent and intimidating manner that will have a life-long impact on the victims. (Id. ¶ 11). Two months later, Defendant again violently robbed a second business. (Id. ¶ 15). He pointed a firearm at a customer and forced her to help him steal money. (Id.). After taking $2,936, Defendant fled from pursuing law enforcement. (Id. ¶¶ 15–17). The weight of the evidence against Defendant in both cases was strong, and he admitted his guilt. (Id. ¶ 2).

Defendant's criminal history underscores that the statutory sentencing factors do not support his request for release. Defendant presents a serious risk of recidivism given that he committed this offense after having served 51–71 months in prison for four prior convictions of robbery with a dangerous weapon. (Id. ¶¶ 52–57). See United States v. Booth, No. 3:15cr56, 2020 WL 6361935, at *4 (E.D. Va. Oct. 29, 2020) (finding that the defendant "present[ed] a danger both to himself and the community" because he had several prior larceny convictions at the time he committed the underlying offense). Defendant was placed on post-release

-9-

supervision on March 3, 2016. (PSR ¶ 56). He proceeded to commit the two violent, armed robberies in his matter while he was on post-release supervision for similar conduct. (Id. ¶ 1 (indicating offense dates of September 17, 2016 for counts one and Two and November 17, 2016 for counts three and four)). Defendant's post-release supervision was revoked on November 21, 2016, following his apprehension on the second of these two robberies. (Id. ¶ 56). Defendant's criminal history and serious risk of recidivism make clear that the danger his release poses to any other person or the community is serious.

Lastly, Defendant has only served approximately 3 years and 6 months of his 162-month sentence. (Gov. Ex. 1, at 3). Releasing Defendant after serving around 31% of his statutory term sentence (and only 26.4% of his full term) would result in a sentence that failed to reflect the serious nature of this offense or provide just punishment. 18 U.S.C. § 3553(a)(2)(A). In addition, releasing Defendant would undermine any deterrent effect for this serious offense and for an individual who has been convicted of armed robberies occurring on six different occasions. (PSR ¶¶ 1, 52–57; § 3553(a)(2)(B)). Finally, granting Defendant's motion would result in an "unwarranted sentence disparit[y] among defendants with similar records who have been found guilty of similar conduct." § 3553(a)(6). For all of these reasons, Defendant's motion is denied.

In sum, for all these reasons, the Court denies Defendant's motion. This Court notes that, in light of United States v. McCoy, the Court has made its own independent determination as to what constitute "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Defendant has simply not presented "extraordinary and compelling reasons" to warrant a reduction of sentence under Section 3582(c)(1)(A). Having thus

considered defendant's motion and reviewed the pleadings, the Court enters the following Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Defendant's pro se Motion for Compassionate Release/Reduction of Sentence, (Doc. No. 40), is **DENIED**.

Signed: March 19, 2021

Max O. Cogburn Jr
United States District Judge